# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MARY MCKINNEY,

    Defendant.

_____/

Case: 5:25-cr-20435
Judge: Levy, Judith E.
MJ: Altman, Kimberly G.
Filed: 06-11-2025 At 03:03 PM
USA V SEALED MATTER (LG)

Violations:
18 U.S.C. § 1343
18 U.S.C. § 641
42 U.S.C. § 408(a)(4)

## INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

At all times material to the charges in this Indictment:

    1.    The Social Security Administration ("SSA") was an independent agency of the United States within the executive branch of the United States Government.

    2.    The SSA administered, among other things, a Retirement Insurance Benefits program under the authority of Title II of the Social Security Act, through which qualifying individuals could receive monthly cash benefit payments from the SSA upon retirement.

3. Eligibility for Social Security Title II Retirement Insurance Benefits was based, in part, on an individual's age, years of employment, and payment of taxes to the SSA on their covered employment earnings.

4. In certain circumstances, the surviving spouse of an insured worker could be eligible to receive monthly benefit payments based on their late spouse's earnings record. These monthly payments were commonly known as Widow's or Survivor's Insurance Benefits. The minor children of an insured worker could also be eligible to receive Survivor's Insurance Benefits; a child's eligibility for such benefits terminated at age 18.

5. Beginning in or around July 2014, R.L., an individual known to the grand jury, began receiving SSA Title II Retirement Insurance Benefits on her record as well as Survivor's Insurance Benefits based on her deceased husband's earnings record. R.L. died on or about August 25, 2014.

6. Defendant MARY MCKINNEY ("MCKINNEY") was R.L.'s daughter and is currently a resident of Westland, Michigan. MCKINNEY was the informant on R.L.'s death certificate.

7. R.L's Social Security benefits were paid by direct deposit into an joint account at Advantage One Federal Credit Union in the name of R.L. and her late husband, L.L. The SSA was not aware of R.L.'s death. Thus, from in or around September 2014 to in or around November 2015, the SSA continued to make

monthly payments of Title II Program benefits to R.L.'s Advantage One account for the benefit of R.L. Bank records for the account for that time period indicate that R.L.'s Social Security benefits were the only deposits made to the account. The bank records also indicate that funds continued to be withdrawn from R.L.'s account after her death via debit card point-of-sale purchases, online and telephone bill payments, in person cash withdrawals, and ATM withdrawals. There were also multiple checks written off of the account made payable to MARY MCKINNEY bearing R.L's forged signature. MCKINNEY was not an authorized user on R.L.'s account.

8. On October 7, 2015, R.L.'s address of record with the SSA was changed to X34X Corona St., Inkster, Michigan 48141.

9. On December 2, 2015, the direct deposit routing instructions for R.L.'s Social Security benefits were changed to Advantage One Federal Credit Union account #XX4378, on which MARY MCKINNEY was the sole account holder. At that time, MCKINNEY'S address of record with Advantage One was X34X Corona St., Inkster, Michigan 48141.

10. R.L.'s Social Security benefits were deposited to MCKINNEY's Advantage One account from in or around December 2015 to in or around July 2020. MCKINNEY accessed the benefits in the account by making in-person and ATM cash withdrawals and by using a debit card linked to the account to make

point-of-sale purchases at various local businesses and online retailers.

11. After R.L.'s death, neither MCKINNEY nor any other individual was entitled to receive Title II Program benefits on R.L.'s behalf. At the time the benefits were suspended in 2020, the SSA was depositing approximately $1,801.00 per month into MCKINNEY'S Advantage One account. The SSA paid a total of $121,623.00 in unauthorized benefits after R.L.'s death.

## COUNT ONE
## 18 U.S.C. § 1343 – Wire Fraud

12. The General Allegations in paragraphs 1-11 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

### The Scheme

13. Beginning in or around September 2014 and continuing through in or around July 8, 2020, in the Eastern District of Michigan, Southern Division, the defendant, MARY MCKINNEY, with the intent to defraud, knowingly devised and executed a scheme and artifice to defraud and obtain money from the SSA by means of materially false and fraudulent pretenses and representations.

14. The purpose of the scheme and artifice to defraud was for the defendant to obtain continued disbursement of Social Security Act, Title II, Retirement and Survivor's Insurance Benefits paid in the name of her late mother,

R.L., by concealing the fact of R.L.'s death from both the credit union holding the accounts into which the funds were paid, and from the SSA itself.

### Manner and Means

15. It was part of the scheme and artifice that MCKINNEY did not notify the bank that R.L. had died.

16. It was part of the scheme and artifice that MCKINNEY continued to access R.L.'s bank account after R.L.'s death.

17. It was part of the scheme and artifice that MCKINNEY changed R.L.'s address of record with the SSA to be MCKINNEY'S own home address.

18. It was part of the scheme and artifice that MCKINNEY also caused the direct deposit routing instructions of R.L.'s Social Security benefits to be changed to MCKINNEY'S own credit union account.

19. It was part of the scheme and artifice that MCKINNEY, on a regular basis after R.L. died, withdrew R.L.'s Social Security benefits from R.L.'s credit union account by making cash withdrawals and debit card purchases, and by forging R.L.'s signature on various checks. After MCKINNEY transferred the deposit of R.L.'s benefits to her own credit union account, MCKINNEY continued to make cash withdrawals and debit card purchases to access the funds. By these

acts, MCKINNEY fraudulently obtained and converted to her use, or the use of another, thousands of dollars in Social Security benefits intended for R.L.

## Execution of the Scheme

20. On or about the date set forth below, in the Eastern District of Michigan, for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud, the defendant knowingly caused to be transmitted in interstate commerce, by means of wire communications, certain signs, signals, pictures, and sounds as described below:

| Count | Description of Wire Communication | Approx. Date |
|---|---|---|
| 1 | SSA payment of $1,801.00 by wire transfer into a bank account in the name of MCKINNEY | July 8, 2020 |

All in violation of Title 18, United States Code, Section 1343.

## COUNT TWO
## 18 U.S.C. § 641 - Theft of Government Funds

21. The General Allegations in paragraphs 1-11 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

22. Beginning in or around September 2014, and continuing through in or around July 8, 2020, in the Eastern District of Michigan, Southern Division, the defendant, MARY MCKINNEY, willfully and knowingly embezzled, stole, purloined, and converted to her own use, money of the Social Security Administration, a department or agency of the United States, that is, Social

Security Act, Title II, Retirement and Survivor's Insurance Benefits having a value greater than $1,000.00; in violation of Title 18, United States Code, Section 641.

## COUNT THREE
### 18 U.S.C. § 641 – Receipt of Stolen Government Funds

23. The General Allegations in paragraphs 1-11 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

24. Beginning in or around September 2014, and continuing through in or around July 8, 2020, in the Eastern District of Michigan, Southern Division, the defendant, MARY MCKINNEY, did, on a recurring basis, willfully and knowingly receive, conceal, and retain money in excess of $1,000.00 belonging to the Social Security Administration, a department or agency of the United States, that is, Social Security Act, Title II, Retirement and Survivor's Insurance Benefits, knowing the money to have been stolen, with the intent to convert the money to her own use or gain; in violation of Title 18, United States Code, Section 641.

## COUNT FOUR
### 42 U.S.C. § 408(a)(4) - Social Security Benefit Fraud

25. The General Allegations in paragraphs 1-11 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

26. Beginning in or around September 2014, and continuing through in or around July 8, 2020, in the Eastern District of Michigan, Southern Division, the defendant, MARY MCKINNEY, in a matter within the jurisdiction of the Social

Security Administration, having knowledge of an event affecting the continued right to Social Security benefit payments of an individual in whose behalf she was receiving such payments, knowingly and willfully concealed and failed to disclose such event, with the intent to fraudulently secure payment either in a greater amount than is due or when no payment is authorized.

27. Specifically, while receiving benefits intended for R.L., and having knowledge of R.L.'s death, MCKINNEY knowingly and willfully concealed and failed to disclose the fact of R.L.'s death to the SSA, in order to continue receiving R.L.'s monthly benefits. By such action, the defendant fraudulently obtained approximately $121,623.00 in Social Security Act, Title II, Retirement and

Survivor's Insurance Benefits to which she was not entitled; in violation of Title 42, United States Code, Section 408(a)(4).

                                         THIS IS A TRUE BILL

                                         *s/Grand Jury Foreperson*
                                         GRAND JURY FOREPERSON

JEROME F. GORGON JR.
United States Attorney

*s/ Ryan A. Particka*
RYAN A. PARTICKA
Assistant United States Attorney
Chief, White Collar Crime Unit

*s/ Corinne M. Lambert*
CORINNE M. LAMBERT
Special Assistant U.S. Attorney

Dated:  June 11, 2025

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number: |
|---|---|---|

Case: 5:25-cr-20435
Judge: Levy, Judith E.
MJ: Altman, Kimberly G.
Filed: 06-11-2025 At 03:03 PM
USA V SEALED MATTER (LG)

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete

### Companion Case Information

This may be a companion case based on LCrR 57.10(b)(4)[1]:

☐ Yes ☒ No

**AUSA's Initials:** C.M.L.

**Case Title:** USA v. Mary McKinney

**County where offense occurred:** Wayne

**Offense Type:** Felony

Indictment -- **no** prior complaint

### Superseding Case Information

**Superseding to Case No:** _____   **Judge:** _____

**Reason:**

| Defendant Name | Charges | Prior Complaint (if applicable) |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case

June 11, 2025
Date

*Corinne M. Lambert* (signature)
Corinne M. Lambert
Special Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Corinne.Lambert@usdoj.gov
(313) 226-9129
Bar #: P74285

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.